Ana DOALI–MILLER, Plaintiff,

v.

SUPERVALU, INC., t/a Save–
A–Lot, Defendant.

Civil Case No. PWG–10–2422.

United States District Court,
D. Maryland,
Northern Division.

April 11, 2012.

Sherwood R. Wescott, Wescott And Associates LLC, Cambridge, MD, for Plaintiff.

Anne Marie McGinley, Decaro Doran Siciliano Gallagher and Deblasis LLP, Bowie, MD, for Defendant.

### MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses Defendant SuperValu, Inc. t/a Save–A–Lot's Motion *in Limine*, ECF No. 44.[1] Plaintiff Ana Doali–Miller has not responded and the time for doing so has passed. *See* Loc. R. 105.2.a. For the reasons stated herein, Defendant's motion is GRANTED IN PART and DENIED IN PART. Accordingly, this Order disposes of ECF No. 44. In its motion, Defendant requests that the Court prevent Plaintiff from introducing certain "medical records and bills from

---

1. On July 18, 2011, Judge Motz referred this case to me for all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and with the parties' consent. ECF No. 32.

Injury Treatment Center of Maryland, LLC," the facility at which Plaintiff sought medical treatment following the alleged incident on Defendant's premises,[2] "to the extent [such] bills and/or records are introduced to show causation, necessity of treatment, and reasonableness of bills." Def.'s Mem. Supp. Mot. 2–3, ECF No. 44–1. Specifically, Defendant requests that the Court entirely exclude or redact certain passages from two physician reports—an initial report and a discharge report—prepared by Dr. James F. Johnston. *See* Initial Phys. Rep., Def.'s Mot. Ex. B, ECF No. 46, at 1–3; Discharge Phys. Rep., Def.'s Mot. Ex. C, ECF No. 46, at 4–5.[3] I address the relevant portions of each report separately.

## I. INITIAL PHYSICIAN'S REPORT

Defendant's Motion *in Limine* first challenges the admissibility of Plaintiff's Initial Physician's Report dated April 5, 2010, three days after Plaintiff allegedly sustained her injuries. Specifically, Defendant seeks the exclusion (or redaction) of the following passage:

2. In her complaint, Plaintiff alleges that, as she was retrieving a shopping cart from the parking lot of Defendant's store, she struck a broken pole owned and maintained by Defendant, causing her injury. Compl. ¶¶ 1–4, ECF No. 2; Pl.'s Opp'n to Def.'s Mot. Summ. J. 1, ECF No. 21. Plaintiff claims that Defendant was negligent because it failed to warn customers about the dangerous condition and failed to keep the environment safe for patrons. *See* Compl. ¶¶ 3–4; Pl.'s Opp'n 1–2. Defendant denies wrongdoing, and maintains, *inter alia*, that it exercised proper care for its customers, that it lacked notice of the allegedly dangerous condition in the parking lot, that the dangerous condition was open and obvious, and that Plaintiff was contributorily negligent for her injuries because she failed to exercise due care with regard to her own safety. *See* Answer 1–2, ECF No. 6; Def.'s Mem. Supp. Mot. Summ. J. 3–9, ECF No. 20–1. On May 19, 2011, Judge Motz denied Defendant's Motion for Summary Judgment, *see* May 19, 2011 Order, 2011 WL 1935831,

[Plaintiff] Ana D. Doali–Miller ... states she was injured when she bumped into a protruding guardrail which she states had been cut at the Safeway Food Store at Northwood Plaza in Baltimore City on 04/02/2010. She states she then fell onto the shopping cart she was reaching for.

Def.'s Mem. 2 (quoting Initial Phys. Rep. 1). Defendant argues that the quoted passage should be excluded because it is hearsay not within any hearsay exception, because its prejudicial effect outweighs its probative value, and because Plaintiff intends to introduce the report "without any supporting expert testimony." *See* Def.'s Mot. ¶¶ 2–5. For the reasons explained below, I find Defendant's arguments largely unpersuasive. Accordingly, with respect to the Initial Physician's Report, Defendant's motion is DENIED, subject to one minor redaction.

### A. Hearsay Within Hearsay

Hearsay, defined as a statement that its declarant "does not make while testifying

ECF No. 26, finding that "whether the existence of rust on the pole presented a dangerous condition for a period long enough to permit ... Defendant to discover and remedy the condition prior to Plaintiff's injury presents an issue of material fact, requiring resolution by a factfinder, and precluding judgment as a matter of law." May 19, 2011 Mem. 4, ECF No. 25. A three-day jury trial will begin on June 27, 2012. Jan. 24, 2012 Paperless Order, ECF No. 52.

3. The reports quoted in Defendant's memorandum, *see* Def.'s Mem. 2, were not the reports originally attached as exhibits to the motion. Accordingly, the originally attached reports, Exs. B–C, ECF No. 44–2, at 2–7, were incorrectly filed. Defendant re-filed the correct reports upon notification of the filing error by the Court. All references in this Letter Order to the physician's reports refer to the corrected exhibits re-filed by Defendant on January 10, 2012, ECF No. 46.

at the current trial or hearing," and that is "offer[ed] in evidence to prove the truth of the matter asserted in the statement," is generally inadmissible in federal court. Fed.R.Evid. 801(c); *id.* 802. A hearsay statement includes a "written assertion," as well as spoken assertions and nonverbal conduct, if intended to be an assertion. *Id.* 801(a). Therefore, Dr. Johnston's written statements, which were not made while testifying at the current trial or a hearing, are hearsay if offered to prove the truth of the matters asserted therein.[4] Thus, unless a hearsay exception applies, *see id.* 803–804, the report is inadmissible.

Additionally, the report includes Dr. Johnston's recording of out-of-court statements made by Plaintiff, which, if offered to prove the truth of the matters they assert, also constitute hearsay. *See* Fed. R.Evid. 801(c). Because Plaintiff's statements are contained within Dr. Johnston's report, itself hearsay, they are hearsay within hearsay, and are admissible only if "each part of the combined statements conforms with an exception" to the rule against hearsay. Fed.R.Evid. 805; *Jacobsen v. Towers Perrin Forster & Crosby, Inc.*, No. RDB–05–2983, 2008 WL 782477, at \*7 (D.Md. Mar. 20, 2008) ("Hearsay within hearsay ... refers to a hearsay statement that includes within it a further hearsay statement. Such statements are subject to the same evidentiary rules as one-level hearsay statements."). In other words, for Plaintiff's statements to be admissible under Fed.R.Evid. 805, both her statements themselves and the report in which they are contained must be admissible under an exception to the hearsay rule. Accordingly, I begin by considering the admissibility of Plaintiff's statements un-

der Fed.R.Evid. 803(4). I then will address the admissibility of Dr. Johnston's report.

### 1. Plaintiff's Statements: Fed.R.Evid. 803(4)

Federal Rule of Evidence 803 enumerates twenty-three distinct hearsay exceptions, under which statements are admitted "regardless of whether the declarant is available as a witness." Fed.R.Evid. 803; *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 568 (D.Md.2007). Thus, even though Plaintiff is available-indeed, likely-to testify at trial, *see* Joint Proposed Pre–Trial Order 3, ECF No. 38, her statements to Dr. Johnston will be admissible if they fall within one of the exceptions provided in Rule 803. *Compare* Fed.R.Evid. 803 (availability of declarant immaterial), *with id.* 804 (exceptions applicable only if declarant is unavailable).

■ Under Rule 803(4), a statement that "is made for—and is reasonably pertinent to—medical diagnosis or treatment" and that "describes medical history; past or present symptoms or sensations; their inception; or their general cause" is not "excluded by the rule against hearsay." *Id.* 803(4). This hearsay exception is "premised on the notion that a declarant seeking treatment 'has a selfish motive to be truthful' because 'the effectiveness of medical treatment depends upon the accuracy of the information provided.'" *Willingham v. Crooke*, 412 F.3d 553, 562 (4th Cir.2005) (quoting 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.06 (Joseph M. McLaughlin ed., 2d ed.2004)); *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) ("[A] statement made in the

---

4. The report does not satisfy the conditions for non-hearsay statements articulated in Fed. R.Evid. 801(d): The declarant will not testify at trial regarding a past statement, as he is now deceased, *see* Def.'s Mem. 3 n. 2; Fed.

R.Evid. 802(d)(1). Additionally, the report is not the statement of an opposing party, offered against that party, *see* Fed.R.Evid. 802(d)(2).

course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility."); 30C Michael H. Graham, *Fed. Prac. & Proc. Evid.* § 7045 (2d ed. 2005) ("The assumption underlying the exception is that the desire for proper diagnosis or treatment outweighs any motive to falsify."). A statement's admissibility under Rule 803(4) is evaluated under a two-part test: " '(1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.' " *Willingham*, 412 F.3d at 562 (quoting *Morgan v. Foretich*, 846 F.2d 941, 949 (4th Cir.1988)). For the reasons explained below, I find that the majority of Plaintiff's statements, as they are recorded in Dr. Johnston's report, fall within the 803(4) exception and are admissible so long as Dr. Johnston's report itself falls within an exception to the hearsay rule. *See* Fed. R.Evid. 805.

▮▮▮ Three days after the alleged incident in Defendant's parking lot, Plaintiff indicated to Dr. Johnston that she was experiencing pain in her left shoulder, left forearm, left flank, lower back, and left hip and thigh. *See* Initial Phys. Rep. 1. These complaints undoubtedly constitute "present symptoms or sensations" within the meaning of Fed.R.Evid. 803(4). *See American Heritage Dictionary* 1819 (3d ed. 1992) (defining symptom as a "sign or an indication of disorder or disease, espe-

cially when experienced by an individual as a change from normal function, sensation or appearance"); *id.* at 1643 (defining sensation as a "perception associated with ... a specific body condition"). Plaintiff's statement that "she was injured when she bumped into a protruding guardrail ... on 04/02/12 ... [and] fell onto the shopping cart she was reaching for," Initial Phys. Rep. 1, describes the "inception" or "general cause" of her symptoms;[5] it identifies the objects with which she came into contact, the speed or force of her contact with those objects, and the date on which she sustained her injuries. *See* Fed.R.Evid. 803(4). There is no evidence that Plaintiff made this statement to Dr. Johnston for a purpose other than "promoting treatment" or diagnoses, and the statement was consistent with that purpose. *See id.; Willingham*, 412 F.3d at 562. Additionally, her statement is reasonably pertinent to diagnosis or treatment, and likely to be relied on by a physician for that purpose. Fed.R.Evid. 803(4); *see Willingham*, 412 F.3d at 562 (" 'A patient's statement describing how an injury occurred is pertinent to a physician's diagnosis and treatment.' " (quoting *United States v. Gabe*, 237 F.3d 954, 957–58 (8th Cir.2001))); *see also* 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:75 (3d ed. 2007) ("In connection with physical injury, statements saying when the injury occurred, and describing its general nature ... and objects involved in causing injury ... are clearly pertinent."). Thus, because Plaintiff's statement " 'related ... to the cause of her present condition, [and was]

---

5. Statements attributing fault are not admissible under Fed.R.Evid. 803(4). *Ramrattan v. Burger King Corp.*, 656 F.Supp. 522, 530 (D.Md.1987) ("Statements ... concerning what caused the injuries are admissible, but statements concerning ... the fault of the parties are not pertinent to diagnosis or treatment."); *see also* Fed.R.Evid. 803(4) Advisory Committee Note (1972) ("[A] patient's state-

ment that he was struck by an automobile would qualify [under the Rule] but not his statement that the car was driven through a red light."). Plaintiff's statement that the guardrail was protruding, Initial Phys. Rep. 1, does not attribute fault to Defendant. Rather, it describes the object that caused her injury. *See* Mueller & Kirkpatrick, *supra*, § 8:75.

relevant in diagnosing that condition,'" *Willingham*, 412 F.3d at 562 (alteration in original) (quoting *United States v. Iron Thunder*, 714 F.2d 765, 773 (8th Cir.1983)), it is admissible subject to the redaction below.

■ The portion of Plaintiff's statement noting that the injury occurred "at the Safeway Food Store at Northwood Plaza in Baltimore City," however, is not "reasonably pertinent to medical diagnosis or treatment." *See* Fed.R.Evid. 803(4). In general, statements that identify the individual or entity responsible for the injury are "'seldom, if ever, . . . sufficiently related'" to diagnosis or treatment, and are therefore inadmissible. *See Gabe*, 237 F.3d at 957–58 (quoting *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981)).[6] Such statements also tend to impermissibly attribute fault. Graham, *supra*, § 7045 ("Under Rule 803(4), the admissibility of statements as to causation is specifically limited to those of inception or general character of the cause or external source of the past or present symptoms or sensations insofar as reasonably pertinent to medical diagnosis or treatment. Statements of fault would not qualify."). Thus, because Plaintiff's statement describing the location at which

the alleged incident occurred is not relevant to treatment or diagnosis, is not likely to be relied upon by a physician for that purpose, and tends to attribute fault, it is not admissible and must be redacted.[7] As described above, the rest of Plaintiff's statements, as reported in the Initial Report, are admissible under the Rule 803(4) hearsay exception for statements made for the purpose of medical diagnosis or treatment. I turn, now, to the admissibility of the report itself.

### 2. Dr. Johnston's Report: Fed.R.Evid. 803(6)

Federal Rule of Evidence 803 provides that, "regardless of whether the declarant is available as a witness," certain records of a regularly conducted activity "are not excluded by the rule against hearsay." Fed.R.Evid. 803(6). This rule is commonly called the business records exception. The exception applies to a "record[8] of an act, event, condition, opinion, or diagnosis" if five criteria are satisfied. First, the record must be "made at or near the time by—or from information transmitted by— someone with knowledge." *Id.* 803(6)(A). Second, the record must be "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit." *Id.*

6. Sexual abuse cases present an exception to this general rule, as "the identity of the abuser may be relevant to treating the victim's emotional and physiological injuries." *Gabe*, 237 F.3d at 958.

7. To summarize, the first sentence of the Initial Physician's Report, under the Chief Complaint heading, should be redacted as follows, with strikethrough indicating material to be redacted before entering the exhibit at trial: "Ana D. Doali–Miller is a 63–year–old African–American woman who states she was injured when she bumped into a protruding guardrail which she states had been cut ~~at the Safeway Food Store at Northwood Plaza in Baltimore City~~ on 04/02/2010."

8. The Rules define "record" to include "a memorandum, report, or data compilation." Fed.R.Evid. 101(b)(4). Pursuant to Fed. R.Evid. 101, a record may be in electronic or digital format. *See id.* 101(b)(6) ("[A] reference to any kind of written material or any other medium includes electronically stored information."); 30C Graham, *supra*, § 7047; *see also* Fed.R.Evid. 803 Advisory Committee Note (1972) ("The expression 'data compilation' is used as broadly descriptive of any means of storing information other than conventional words and figures in written or documentary form. It includes, but is [not] limited to, electronic computer storage.").

803(6)(B). Third, "making the record [must be] a regular practice of that activity." *Id.* 803(6)(C). Fourth, the first three criteria must be "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." *Id.* 803(6)(D). Finally, the exception only applies if "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." *Id.* 803(6)(E). Collectively, these elements insure that the business record is the result of a regular practice to record regular activity, which is reliable.

Rule 803(6) is premised on the notion that the unusual reliability of business records is " 'supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.' " 4 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 803.02[7][a], at 803–41 (8th ed.2002) (quoting Fed.R.Evid. 803 Advisory Committee Note (1972)). The Fourth Circuit has noted that "[r]eports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy for two reasons." *Certain Underwriters at Lloyd's, London v. Sinkovich,* 232 F.3d 200, 204–05 (4th Cir. 2000). First, " 'businesses depend on such records to conduct their own affairs; accordingly, the employees who generate them have a strong motive to be accurate and none to be deceitful.' " *Id.* (quoting *United States v. Blackburn,* 992 F.2d 666, 670 (7th Cir.1993)); *see also* Graham, *supra,* § 7047 ("Records of regularly conducted activities cannot fulfill the function of aiding the proper transaction of business unless accurate. The motive for following a routine of accuracy is great and the motive to falsify largely non-existent.")

Second, " 'routine and habitual patterns of creation lend reliability to business records.' " *Sinkovich,* 232 F.3d at 205 (quoting *Blackburn,* 992 F.2d at 670); *see also* 2 Kenneth S. Broun, *McCormick on Evidence* § 286 (6th ed. 2006) ("The regularity and continuity of the records are calculated to train the recordkeeper in habits of precision; … in actual experience, … many … activities function in reliance upon records of this kind.").

▮ Pending presentation of foundational evidence at trial, the Initial Physician's Report prepared by Dr. Johnston satisfies the Rule 803(6) exception. Preliminarily, the report is a "record of an act, event, condition, opinion, or diagnosis." Fed.R.Evid. 803(6); *see id.* 101(b)(4) (defining "record" to include reports). The report records statements made by Plaintiff during Dr. Johnston's initial examination; it also records opinions and diagnoses formed by Dr. Johnston during that appointment. The report also satisfies the other criteria for application of the 803(6) hearsay exception, assuming an adequate foundation is laid at trial.

First, Dr. Johnston's report was "made at or near the time" of the event it records—his initial examination of Plaintiff—and memorializes his personal observations. *See* Fed.R.Evid. 803(6)(A); *see also id.* 602; Mueller & Kirkpatrick, *supra,* § 8.78 ("[T]he source of information … must be a person who has personal knowledge, which means the kind of firsthand information that Fed.R.Evid. 602 requires for testifying witnesses."). The examination was performed on April 5, 2010, three days after the incident in Defendant's parking lot. *See* Initial Phys. Rep. 2. The report of the examination is dated April 6, 2010, one day later. *See id.* at 3. The one day gap between the examination and the recording of the exam is not "so great as to suggest a danger of inaccuracy by lapse

of memory." *See* Broun, *supra,* § 289; *see also* Mueller & Kirkpatrick, *supra,* § 8:78 ("[T]here should not be much time between the act, event, or condition reflected in the record and the report of that information. . . . The memories of the source and the entrant should be fresh."). Moreover, the one day gap does not "suggest nonregularity in the making of the statement," nor does it "indicate motivational problems related to records prepared for litigation purposes." *See* Broun, *supra,* § 289. The report contains Dr. Johnston's comments regarding the examination, a recording of Plaintiff's statements about her symptoms and the cause of her injuries, and Dr. Johnston's opinions and diagnoses. *See* Mueller & Kirkpatrick, *supra,* § 8.81 ("[T]he [Rule 803(6)] exception reaches parts of the record reporting or otherwise reflecting the substance of what the patient . . . says in describing symptoms and cause of injuries, at least insofar as [her] account is germane to diagnosis or treatment.").[9] Because Dr. Johnston performed the examination of Plaintiff and based his report on the examination, he is someone with personal knowledge of that event.

Second, a doctor's report recording his or her examination of a patient is the kind of record "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling." *See* Fed. R.Evid. 803(6)(B). A hospital or medical provider is certainly "a business, organization, occupation, or calling" within the meaning of the rule. *See id.; see also* Saltzburg et al., *supra,* § 803.02[7][b], at 803–42 ("[T]he term 'business' should be given an expansive reading."). As a result, records "kept by hospitals and doctors often fit the [Rule 803(6)] exception and are routinely admitted." Mueller & Kirkpatrick, *supra,* § 8.81; *id.* ("Records and reports prepared by doctors working outside the hospital setting are equally within reach of the exception."); *Sunkett v. Nat'l Gypsum Co.,* No. 09–0721, 2011 WL 6719776, at *16 (D.N.J. Dec. 21, 2011) ("As a general matter, the Court notes that medical records of treating health care providers are typically admissible under the business records exception." (citing *O'Brien v. Int'l Bus. Machs., Inc.,* No. 06–4864, 2009 WL 806541, at *5 n. 10 (D.N.J. Mar. 27, 2009); *Tenney v. City of Allentown,* No. 03–3471, 2004 WL 2755538, at *1 (E.D.Pa. Nov. 30, 2004))); Fed.R.Evid. 1002 Advisory Committee Note (1972) (noting that hospital records "may be admitted as business records under Rule 803(6)"). The rule's reference to "opinions" and "diagnoses" suggests this result. *See* Fed.R.Evid. 803(6).

Third, it is a "regular practice" of medical providers to make records of their examinations of patients. *See id.* 803(6)(C); *cf. Thomas v. Hogan,* 308 F.2d 355, 361 (4th Cir.1962) ("There is good reason to treat a hospital [or other medical] record entry as trustworthy. Human life will often depend upon the accuracy of the entry, and it is reasonable to presume that a hospital [or other medical provider] is staffed with personnel who competently

---

**9.** Indeed, to the extent that "patient statements are not related to diagnosis or treatment, they would not ordinarily find their way into records made by hospitals or doctors because they would serve no professional purpose." Mueller & Kirkpatrick, *supra,* § 8.81. Additionally, because the introduction of medical records by the patient that contain information for which the patient herself is the source present hearsay with hearsay problems, such statements would ordinarily be excluded in the preliminary analysis under Fed.R.Evid. 803(4). *Cf. id.* (noting that the exceptions for medical statements and business records are often combined, and stating that the need in these contexts "to employ the medical statements exception reinforces the point that what the patient reports must itself be germane to treatment," as the exception is expressly so limited).

perform their day-to-day tasks. To this extent at least, hospital [or other medical] records are deserving of a presumption of accuracy even more than other types of business entries."); [10] *Schmidt v. Riemenschneider,* 196 Minn. 612, 265 N.W. 816, 817 (1936) ("A hospital attendant's professional reputation depends in no small measure on his ability to accurately keep such records. A physician's or surgeon's success, in many instances, may depend largely upon the accuracy of these records."). Rule 803(6)'s regularity requirement demands "the existence of a routine, attended by some notion of 'standard operating procedures' that are often written but sometimes exist simply as a matter of unwritten custom." Mueller & Kirkpatrick, *supra,* § 8:78; *cf. Lorraine,* 241 F.R.D. at 571 ("It is essential for the exception to apply that it was made in furtherance of the business' needs, and not for the personal purposes of the person who made it."). Reports prepared by doctors during or immediately after patient examination satisfy the requirement of regularity. These documents are made in furtherance of the medical practice in which doctors such as Dr. Johnston engage; they are not made for the personal purposes of the doctor preparing the report. Moreover, pursuant to Fed.R.Evid. 803(6)(D), that such record-making was the "regular practice" of Dr. Johnston's medical group must be established at trial by the records custodian or "another qualified witness," or by a Rule 902(11) certification.

Finally, "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." *See* Fed.R.Evid. 803(6)(E). The report was prepared one day after the examination was conducted, and a mere four days after the incident in which Plaintiff alleges she was injured. *See* Initial Phys. Rep. 1–3. Nothing about the report suggests that it was prepared in anticipation of litigation. *See infra* (discussing the discharge report). Indeed, nothing about Dr. Johnston's initial report upsets the primary theory underlying Rule 803(6)—that "[r]eports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy." *See Sinkovich,* 232 F.3d at 204–05.

### B. Foundation Testimony

Rule 803(6)(D) provides that the other criteria listed in the rule (and described above)—contemporaneity, regularity of the conducted activity, and regularity of the record-making—must be "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R.Evid. 803(6)(D). Rule 902(11), which is applicable here, provides for the authentication of "certified domestic records of a regularly conducted activity." *Id.* 902(11); *see also id.* 902(12) (addressing foreign records). Under Rule 902(11), "[t]he original or a copy of a domestic record" that satisfies "the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court," is self-authenticating, meaning that it "require[s] no extrinsic evidence of authenticity in order to be admitted." *Id.* 902(11).

In its motion, Defendant argues that the quoted passage of Dr. Johnston's Initial Physician's Report should be excluded because Plaintiff intends to introduce the

---

**10.** In *Thomas,* the Fourth Circuit addressed the trustworthiness of medical records in the context of the federal "shop-book" statute, 28 U.S.C. § 1732. The shop-book statute is "the predecessor to Rule 803(6)." *United States v. Farmer,* 820 F.Supp. 259, 265–66 (W.D.Va. 1993).

report "without any supporting expert testimony" regarding causation. Def.'s Mot. ¶¶ 3–4. The Rule, however, does not require supporting expert testimony; rather, Plaintiff has two options: She may establish the criteria stated in Rule 803(6) either: (1) through the in-court testimony of the custodian of records or another qualified witness; or (2) "by a certification" made pursuant to Rule 902(11). *See* Fed. R.Evid. 902 Advisory Committee Note (2000) (noting that the rule "sets forth a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness"); Mueller & Kirkpatrick, *supra*, § 8:78 ("In 2000, the [803(6)] exception was amended to dispense with the need for any kind of live foundational testimony and to permit the proponent to use a certification procedure instead.").

As to Plaintiff's first option, foundation testimony provided by a qualified witness, Defendant notes that Dr. Johnston sadly has passed away. *See* Def.'s Mem. 3 n. 2. The fact that Dr. Johnston is not available to serve as a foundation witness is not necessarily fatal to the admissibility of the Initial Physician's Report. Instead, the custodian of the records or any other qualified witness may lay the necessary foundation, so long as the custodian or witness is "familiar with the business and its mode of operation," and is able to identify the record and establish that "it is a record in fact made at or near the time in the regular course of a regularly conducted business activity, made by or from information transmitted by a person within the business with knowledge." Graham, *supra*, § 7047 (citing Fed.R.Evid. 803(6)); *see also United States v. Porter*, 821 F.2d 968, 977 (4th Cir.1987) (indicating that a "qualified witness" under Rule 803(6) is either the custodian of records or someone who "know[s] the record keeping requirements of the company"); *United States v. Her-*

*nandez*, No. 98–4378, 1998 WL 841504, at *2 (4th Cir. Dec. 7, 1998) (finding that a witness was not qualified where he failed to "testify that he was familiar with the creation and maintenance of the … records"). "[N]either the original entrant nor the individual possessing personal knowledge of the event [recorded] need be produced or identified." Graham, *supra*, § 7047; Saltzburg et al., *supra*, § 803.02[7][d], at 803–48 ("The foundation witness must know something about the recordkeeping process, but the witness need not have personal knowledge of any particular recording or how it was made."); Mueller & Kirkpatrick, *supra*, § 8:78 ("It is not fatal, then, that the foundation witness did not himself prepare the record, or that he did not supervise its preparation, or that he [did] not observe the process in the particular case. Indeed, it is not necessary that the foundation witness have *any* firsthand information about its preparation. Also, it is not necessary to call the original source (the one with personal knowledge of the matter recorded).").

As to Plaintiff's second option, a certification made pursuant to Rule 902(11) will satisfy the foundational requirements of Rule 803(6). A certification is "a sworn statement, or an unsworn statement given under penalty of perjury." Mueller & Kirkpatrick, *supra*, § 8:78; *see* Fed. R.Evid. 902 Advisory Committee Note (2000) ("A declaration that satisfies 28 U.S.C. § 1746 would satisfy the declaration requirement of Rule 902(11), as would any comparable certification under oath."); 28 U.S.C. § 1746 ("Where, under any law of the United States or under any rule … made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn … certificate … in writing of the person making the same …, such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn … certificate … in writ-

ing of such person which is subscribed by him as true under penalty of perjury, and dated."). The proponent often "uses an affidavit prepared with the aid of a notary public because it is convenient and the affidavit is itself self-authenticating, but an affidavit or notarized statement is not required." Mueller & Kirkpatrick, *supra,* § 8:78 (citing *United States v. Thomas,* 128 Fed.Appx. 986, 992 (4th Cir.2005)).

Significantly, the certification option does not "eliminate the need for a qualified witness, nor does it change the type of qualifications that have been found necessary for a witness to be able to establish a foundation for business records." Saltzburg et al., *supra,* § 803.02[7][d], at 803–49. Instead, it merely "provides that the qualified witness can establish the foundation without being called to testify." *Id.* (noting that the certification option was "intended to limit unnecessary cost and inconvenience, by permitting a qualified

witness to provide the foundation for business records by way of affidavit in lieu of in-court testimony").

Thus, whether in the form of live testimony or certification, the requirements of Rule 803(6) must be established by a foundation witness. Put simply, the foundation witness must "know enough to say that the record was prepared in the ordinary course of business in the manner contemplated by [Rule 803(6)] (being regularly kept, all participants acting in the ordinary course, source with knowledge, timeliness)." Mueller & Kirkpatrick, *supra,* § 8:78. The witness must "be familiar with the pertinent record-making practices of the business, and with the manner in which records of the particular sort being offered are made and kept." *Id.* This knowledge may be largely circumstantial, and the witness may "even rely partly on what he has learned by talking to others about record-keeping processes." [11] *Id.*

11. The foundation witness's testimony may relay hearsay because his or her testimony goes to the admissibility of the record under Fed.R.Evid. 803(6), and, pursuant to Fed.R.Evid. 104(a), in deciding preliminary questions regarding the admissibility of evidence, the Court "is not bound by evidence rules, except those on privilege." Fed.R.Evid. 104(a); *see also id.* 1101(d)(1) (stating that the evidence rules—"except for those on privilege"—do not apply to "the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility.)"

Because the elements of Fed.R.Evid. 803(6) and Fed.R.Evid. 902(11) "are essentially identical, they frequently are analyzed together when Rule 902(11) is the proffered means by which a party seek[s] to admit a business record." *Lorraine,* 241 F.R.D. at 572 (citing *In re Vee Vinhnee,* 336 B.R. 437, 444–46 (9th Cir.BAP2005); *Rambus, Inc. v. Infineon Techs. AG,* 348 F.Supp.2d 698, 701 (E.D.Va. 2004)). It may be useful, however, to distinguish between the "two related functions" that foundation witnesses may serve, as the function may limit the nature of the witness's testimony. Mueller & Kirkpatrick, *supra,* § 8:78. First, foundation witnesses are necessary to "show[] that the elements of the

business records exception are present in the document," and that, as a result, the document is admissible. *Id.* The admissibility of evidence, as noted above, is a preliminary determination to be made by the Court. Fed.R.Evid. 104(a). In making this determination, the court may consider hearsay and other non-privileged material that generally would be inadmissible under the Federal Rules of Evidence. *See id.; id.* 1101(d)(1) As a result, when used to establish the elements of Rule 803(6), the foundation witness may relay hearsay.

Foundation witnesses are also necessary to authenticate the record, meaning that they establish "that the record being offered is what the proponent claims it to be." Mueller & Kirkpatrick, *supra,* § 8:78. Authentication is "viewed as a subset of relevancy, because 'evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims.'" *Lorraine,* 241 F.R.D. at 539 (quoting *United States v. Branch,* 970 F.2d 1368, 1370 (4th Cir.1992)). Here, the parties have stipulated to the authenticity of all documents. *See* Joint Proposed Pre–Trial Order 2. As a result, because the foundation witness will be used only to establish the applicability of Rule

Where, however, the "witness lacks even circumstantial knowledge," he or she cannot lay an adequate foundation. *Id.*

Rule 902(11) also requires that, prior to the trial or hearing, the record's proponent give the adverse party "reasonable written notice of the intent to offer the record—and ... make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." Fed.R.Evid. 902(11). Defendant has not suggested that Plaintiff failed to provide adequate notice of her intent to offer the record; indeed, by virtue of its filing of the present motion *in limine,* which challenges the record's admissibility, the Court may presume that Defendant had adequate notice of Plaintiff's intent to use the record. *See* Mueller & Kirkpatrick, *supra,* § 8:78 ("Clearly the point is to provide enough notice to apprise other parties of the nature of the material to be offered, including its substance, so the other side can decide whether to challenge what is offered as not being authentic or not fitting the exception.").

I note that, in the Joint Proposed Pre-Trial Order, Plaintiff listed only factual witnesses. *See* Joint Proposed Pre-Trial Order 3. The custodian of records at Dr. Johnston's medical office, the Injury Treatment Center of Maryland, LLC, is not listed, nor is any other employee of that office. Whether by live testimony or in the form of a certification, Plaintiff must lay the Rule 803(6) foundation for the Initial Physician's Report. A pretrial telephone conference call is scheduled for Friday, May 25, 2012. If Plaintiff intends to add an additional witness to the list contained in the proposed pretrial order *(i.e.,*

a qualifying witness to lay the foundation for admissibility of the report), she should do so by the pretrial conference call, and the parties should submit a modified joint proposed pretrial order. Alternatively, if Plaintiff intends to lay the foundation for admissibility of the report by certification made pursuant to Rule 902(11), she should make the certification available to Defendant for inspection by May 25, 2012, so that Defendant has "a fair opportunity to challenge" it before trial. *See* Fed.R.Evid. 902(11).

## C. Federal Rule of Evidence 403

■ Finally, Defendant argues that the Initial Physician's Report must be excluded because its " 'probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues and/or misleading the jury.' " Def.'s Mot. ¶ 5 (quoting Fed.R.Evid. 403). Defendant's chief concern is that, because Dr. Johnston is unavailable to testify at trial, and therefore will not be subject to cross-examination, the jury is likely to be "mislead as to the facts used by Dr. Johnston in forming his opinion." Def.'s Mem. 6; *see also id.* ("Defendant will be barred any chance to cross-examine Dr. Johnston to explain to the jury that his opinion was based on an incorrect description of the mechanics of the alleged incident."). I note, preliminarily, that while it is true that Dr. Johnston is unavailable to testify at trial, Defendant will have an opportunity to challenge Dr. Johnston's report-either by cross-examining Plaintiff's foundational witness, or by challenging Plaintiff's Rule 902(11) certification. Moreover, Defendant is free to attack Dr. Johnston's credibility or challenge the validity of his

---

803(6), the fact that his or her testimony may relay hearsay is of no consequence. Because the analyses under Fed.R.Evid. 803(6) and Fed.R.Evid. 902(11) "are essentially identical," *Lorraine,* 241 F.R.D. at 572, it may be tempting to assume that the parties' stipula-

tion as to authenticity by definition includes a stipulation as to the other grounds for admissibility. However, because Defendant specifically challenges the records on hearsay grounds, I will not do so.

conclusions just as it would if Dr. Johnston were available to testify at trial. *See* Fed. R.Evid. 806 ("When a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness.").

Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. In this context, "unfair prejudice" is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 Advisory Committee Note (1972). The issue in a Rule 403 analysis "is whether the search for truth will be helped or hindered by the interjection of distracting, confusion, or emotionally charged evidence." Weinstein & Berger, *supra,* § 403.02[1][a]. Defendant's concern that the report will mislead the jury or lead to confusion of the issues is unpersuasive, and Defendant presents no other specific examples of unfair prejudice that would be caused by admission of the Initial Physician's Report. Accordingly, Defendant has presented no legitimate grounds for exclusion of this relevant evidence under Fed.R.Evid. 403.

For the foregoing reasons, I find that Dr. Johnston's report is admissible as a business record under Fed.R.Evid. 803(6). Fed.R.Evid. 403 does not require the report's exclusion. Consequently, those statements of Plaintiff's that are included in Dr. Johnston's report, and which are admissible in their own right as statements made for medical diagnosis or treatment under Fed.R.Evid. 803(4), are admissible pursuant to Fed.R.Evid. 805. *See* Fed. R.Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Thus, as to the Initial Physician's Report, Defendant's motion is DENIED, with the limitations described above. Plaintiff may introduce the report at trial, so long as a proper foundation is laid and the required redaction is made.

## II. DISCHARGE PHYSICIAN'S REPORT

■ Defendant's Motion *in Limine* next challenges the admissibility of a Discharge Report prepared by Dr. Johnston, the same physician who prepared the Initial Physician's Report. Specifically, Defendant seeks the exclusion (or redaction) of the following passage:

> All medical treatments and evaluations were deemed medically necessary for this patient's reported complaints with the reported accident date of 04/02/2010. In my opinion, the injuries and associated pain were related to the accident. To a reasonable degree of medical certainty her subjective complaints and the objective findings were consistent with the mechanism of injury as described by the patient on 04/02/2010. The treatment she received was reasonable and necessary and charges for medical treatment from ITCM of Maryland were fair and similar to other healthcare providers in the region.

Def.'s Mem. 2 (quoting Discharge Phys. Rep. 5). As with the Initial Physician's Report, Defendant argues that the quoted passage should be excluded because it is hearsay not within any exception, because its prejudicial effect outweighs its probative value, and because Plaintiff intends to introduce the report "without any supporting expert testimony." *See* Def.'s Mot. ¶¶ 2–5. As I explain below, because the report clearly appears to have been pre-

pared in anticipation of litigation, Defendant's motion is GRANTED with respect to the Physician's Discharge Report.

■ If offered to prove the truth of the matters asserted therein, the Discharge Report is hearsay because it contains assertions made by Dr. Johnston outside of a trial or hearing. *See* Fed.R.Evid. 801–802. Unless a hearsay exception applies, *see id.* 803–804, the report is inadmissible. Like the Initial Physician's Report, if the Physician's Discharge Report is to be admitted under an exception to the hearsay rule, it must satisfy the requirements of Fed. R.Evid. 803(6). As noted above, "[r]eports and documents prepared in the ordinary course of business," including the business of hospitals and other medical providers, "are generally presumed to be reliable and trustworthy." *Sinkovich*, 232 F.3d at 204–05; *Sunkett*, 2011 WL 6719776, at *16. There is a clear absence of trustworthiness, however, "when a report is prepared in the anticipation of litigation because the document is not for the systematic conduct and operations of the enterprise but for the primary purpose of litigating." *Sinkovich*, 232 F.3d at 205 (citing *Scheerer v. Hardee's Food Sys. Inc.*, 92 F.3d 702, 706–07 (8th Cir.1996)); *see also Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir.1993) (finding meritless the defendant's argument that an affidavit prepared on its behalf was admissible under the business records hearsay exception and noting that "[a]n affidavit prepared for trial is not a record of regularly conducted activity"); *cf. Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) (reviewing a federal statute providing for the admissibility of records made in the regular course of business, *see* 28 U.S.C. § 695, and finding the records at issue inadmissible because they were made in anticipation of litigation and were favorable to the party that produced them).

Put simply, the fact that a record was made in anticipation of pending litigation suggests that it will not satisfy the requirements of Rule 803(6) for at least two reasons. *See generally* Mueller & Kirkpatrick, *supra*, § 8:78. First, having been prepared with a specific event in mind (namely, forthcoming litigation), the record cannot be said to have been made in the course of a business's regularly conducted activity or as part of a regular practice of that business. *See* Fed.R.Evid. 803(6)(B)-(C); *see also* Broun, *supra*, § 289 ("[T]he failure to make a timely record may suggest nonregularity in the making of the statement."). Second, that the record was prepared with litigation in mind, and thus with a likely motivational bias, indicates that the record lacks trustworthiness. *See* Fed.R.Evid. 803(6)(D); *see also* Mueller & Kirkpatrick, *supra*, § 8:83 & n. 24 (collecting cases) ("If a record was prepared with an eye toward litigation, this fact is an indication of untrustworthiness, as are obvious motives that would incline the preparer toward errors or overstatements that would be detrimental to the objecting party."); Saltzburg et al., *supra*, § 803.02[7][g], at 803–52 ("Documents prepared for litigation are prime candidates for exclusion as untrustworthy, at least where the report is favorable to the party who prepared the record. The reason for exclusion of such reports as untrustworthy is that the motivation of the preparer is suspect, given the anticipation of litigation.").

The Discharge Report was prepared in conjunction with an examination performed by Dr. Johnston on May 24, 2010—more than fifty days after the incident in Defendant's parking lot. *See* Discharge Phys. Rep. 4. The report indicates that, as of that date, no additional follow-up was necessary and that Plaintiff was discharged from Dr. Johnston's care. *See id.* Despite these facts, Dr. Johnston's report

concludes that: (1) the medical treatment given to Plaintiff was "medically necessary"; (2) "the injuries and associated pain" experienced by Plaintiff "were related to the accident" in Defendant's parking lot; (3) "[t]o a reasonable degree of medical certainty[,] her subjective complaints and the objective findings were consistent with the mechanism of injury" as described by Plaintiff in her April 2, 2010 appointment; and (4) "[t]he treatment [Plaintiff] received was reasonable and necessary," and the cost of her care was "fair and similar to other healthcare providers in the region." *Id.* These statements suggest that this report was prepared in anticipation of litigation. They are the kind of statements routinely made by medical experts testifying pursuant to Fed.R.Evid. 702 and 703. *See, e.g., Samuel v. Ford Motor Co.,* 112 F.Supp.2d 460, 474 (D.Md.2000) (noting that "cautious counsel" frequently encourage their experts to use the "magic words" "to a reasonable degree of medical certainty or probability" in their testimony); *Desua v. Yokim,* 137 Md.App. 138, 768 A.2d 56, 58–59 (Md.2001) ("In order for the amount incurred for medical care to be admissible as evidence of special damages, there ordinarily must be evidence that the amounts are fair and reasonable." (internal quotation marks and citation omitted)). Additionally, the report is favorable to Plaintiff, the party for whom it was prepared. As a result, the report lacks trustworthiness. *See* Fed.R.Evid. 803(6)(D). Dr. Johnson's statements also suggest that the report—or at least the final paragraph of the report—was not made in the course of the office's regularly conducted activity or as part of the office's regular practice. *See id.* 803(6)(B)-(C). For these reasons, the Discharge Physician's Report does not satisfy Rule 803(6). Because no other hearsay exception applies, the report must be excluded. Consequently, as to the Discharge Report, Defendant's motion is GRANTED.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion *in Limine* is GRANTED IN PART and DENIED IN PART. Plaintiff may introduce the Initial Physician's Report at trial, so long as a proper foundation is laid either by live testimony or certification and the required redaction is made. Plaintiff is prohibited from introducing the Discharge Physician's Report.